CHRISTIANA JACQUIN, Respondent, v. GRAND AVENUE CABLE COMPANY, Appellant.

Kansas City Court of Appeals, March 26, 1894.

1. **Pleadings:** CONSTRUCTION OF. A pleading, reading that it was the duty of defendant to have "proper appliances for stopping its road and cars," is construed to mean for stopping its cars and not its road.

2. **Instruction:** PLEADING: WIDENING ISSUES: NEGLIGENCE. It is the duty of the court by its instructions to confine the jury to the consideration of the specific grounds of negligence alleged in the petition, and not by its instruction to widen the issue so as to allow a recovery on a negligent act not set up in the declaration.

3. **Negligence:** PLEADING. Acts which it is intended to be shown were negligently done should be set out with a reasonable degree of particularity, and in some appropriate form of expression charged to have been negligently done, and thereby advise the defendant of the particular negligence complained of so that he may know what he is called upon to defend against.

4. **Carriers:** PASSENGERS: DEGREE OF CARE: INSTRUCTION. Passenger carriers bind themselves to carry safely their passengers as far as human care and foresight will go; that is, for the utmost care and diligence of a very cautious person, or, as sometimes otherwise expressed, the utmost care and skill which prudent men are accustomed to use under similar circumstances; and an instruction requiring the carrier to exercise "the utmost practicable skill, care, knowledge, foresight and wisdom, and in order to relieve itself from the consequences of the plaintiff's injury to show to the satisfaction of the jury that it exercised the utmost practicable skill, knowledge, foresight, care, inspection and examination of its road, roadbed, track, cars, machinery, etc.," exceeds the demand of the law which does not require the utmost degree of care which the human mind can attain or is capable of inventing, nor does the defendant's instruction given in this case cure this vice of the instruction. *Dougherty v. Railroad,* 97 Mo. 647, *explained.*

5. Instructions.: EXCLUDING DEFENSE. Instructions should not exclude the defendant's defense and substitute and submit another, as where the defense is that under the circumstances it was, not physically, but practically, impossible to stop the car, it is error for the instruction to require the carrier to prove to the satisfaction of the jury that the injury was occasioned by inevitable accident. *Lemon v. Chanslor*, 68 Mo. 340, *distinguished*.

6. Damages: MEASURE OF: INSTRUCTION. The elements of damages for an injury resulting from negligence of a passenger carrier are compensation for the pain suffered, time lost and permanent injury and expense in being cured, and the instruction should limit and confine the jury to these elements; and two instructions in this case are condemned for not so confining the jury, though in one of them these elements are specifically mentioned.

7. Carriers of Passengers: FLAGMAN AT RAILWAY CROSSING: ORDINANCE: STATUTE: NEGLIGENCE. In this case no ordinance of the city being shown requiring a flagman at a railway crossing, and there being no statute to that effect, a railroad passenger carrier is not bound to keep a watchman at its crossings of another railway; but a jury may find in view of the danger at a particular crossing it is negligence to omit such precaution; and it is error in this case to instruct the jury as matter of law that it was the duty of the carrier to keep a watchman at the crossing in question.

8. ———: ———: PLEADINGS: INSTRUCTION. Instructions must have the pleadings as their basis, and an instruction relating to the incompetency and negligence of a flagman is condemned because the petition has no reference to any such issue.

9. ———: NEGLIGENCE: PLEADING: COMPETENCY OF SERVANT. Plaintiff can not filé a petition against a passenger carrier and make no allegation as to the compentency of its employees and then recover under an instruction on the ground of the neglect of a watchman when there is nothing in the evidence showing any connection of the watchman with the proximate cause of the accident.

*Appeal from the Jackson Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED AND REMANDED.

STATEMENT.

This accident happened in Kansas City near the crossing of Holmes and Twentieth streets. At that point Holmes street runs north and south, and has on

it a double track cable railroad, owned and operated by the appellant herein, the Grand Avenue Railway Company, and on Twentieth street there were the tracks of the Kansas City Belt Railway Company, used for operating steam cars thereon. These two lines of railway cross each other at right angles, at the intersection of said streets. On the southeast corner of these streets there stands a large two-story frame house, which is built even with both Holmes and Twentieth streets, and extends eastward a long distance; but the other three corners are unoccupied, and the spaces are clear, so as to leave an open view. On the cable line the north bound cars ran on the east track, and the south bound cars on the west track, while on the Belt line the locomotives and cars going east ran on the south track, and coming west on the north track. In approaching Twentieth street from the south there was a down grade of over four feet to the hundred on Holmes which was established and maintained by the city, and the cable company had no control over the grade. At the crossing there was kept, at the joint expense of the two railroad companies, a watchman, and gates had been provided and were in use, to be lowered when trains or cars were passing on the Belt Line. In going north on the cable car from Twenty-first down to Twentieth street, the gripman could easily see cars on the Belt Line as they approached from the west, but when they crossed over Holmes street they would at once pass out of view behind the large frame building on the southeast corner above mentioned. On the morning of the accident it had been raining for a few minutes preceding its occurrence, and in consequence thereof, the track was in such condition as to make it difficult to stop the cars thereon. The evidence shows that this plaintiff was a passenger on one of these Holmes street cable cars going north, and in

coming down the grade towards Twentieth street, the gripman saw a train of cars on the Belt Line coming from the west, with an engine at the rear pushing the same, and at that time the watchman let down the gates. The cable car was then back several hundred feet from the south line of Twentieth street. There was nothing to indicate but what the locomotive would continue pushing the cars on eastward, and, hence, as soon as they passed over Holmes street, the watchman raised the gates, and, in the meantime, the gripman was proceeding on his way, and the locomotive and cars had passed behind the large building on the southeast corner. The gates were up, and there was nothing to inform the gripman of any probable danger. But when the engineer on the locomotive had pushed the cars a short distance beyond Holmes street, he dropped the cars, reversed his engine, and began to return on this south track of the Belt Line. The flagman, noticing this, at once lowered his gates, and they came down suddenly when the car was distant two or three lengths from the south one. The conductor, perceiving the locomotive coming out from behind the frame building, called to his passengers to save themselves, and they escaped rapidly, and this plaintiff was thrown down and injured.

There was evidence that the cable track on the incline had been well sanded by hand just before the car approached. There was also evidence that the appliances for stopping the cars were the best known and were in perfect working order at the time of the accident. There was also some evidence tending to show in the condition the track was it was, impossible to stop the car sooner than was done.

This meager and imperfect statement of the case will be found sufficient for a proper understanding of the questions hereinafter considered. There was a

trial and judgment for the plaintiff, from which the defendant has appealed.

*Karnes, Holmes & Krauthoff* for appellant.

(1) The first instruction given for plaintiff was erroneous in that the degree of care to be exercised by defendant was greater than the law requires, and submitted issues to the jury not warranted by the pleadings and the evidence. *Jackson v. Railroad,* 24 S. W. Rep. (Mo.) 192, 196; *Smith v. Railroad,* 108 Mo. 243, and cases cited; *Gilson v. Railroad,* 76 Mo. 282, 287; *Carter v. Railroad,* 42 Fed. Rep. 37, 40; *O'Connell v. Railroad,* 106 Mo. 482, 484, 488; *Waller v. Railroad,* 83 Mo. 609, 611; *Sawyer v. Railroad,* 37 Mo. 240, 260; *Leslie v. Railroad,* 87 Mo. 50, 55; *Tuller v. Talbott,* 23 Ill. 357, 362; Wharton on Neg., secs. 634, 635; Hutchinson on Carriers, sec. 502; 2 Rorer on Railroads, p. 955; Redfield on Carriers, sec. 347; 1 Shear. & Red. on Neg., sec. 16. (2) The second instruction for the plaintiff is erroneous in that it declares a too general rule on the question of plaintiff's measure of damages, and does not confine the jury to the elements recognized by law as forming part of the amount plaintiff is entitled to recover. *Hawes v. Stock Yards Company,* 103 Mo. 66; *Stephens v. Railroad,* 96 Mo. 207, 211; *Matney v. Grain Company,* 19 Mo. App. 107, 112; *Stewart v. City of Clinton,* 79 Mo. 603, 607, 614; *Flynt v. Railroad,* 38 Mo. App. 94, 98; *McGowan v. Ore and Steel Company,* 109 Mo. 518; Patterson on R'y Acc. Law, sec. 389, p. 468; 1 Shear. & Red. on Neg. [4 Ed.], sec. 740, p. 629; 3 Suth. on Dam. [2 Ed.], sec. 1256, p. 2694. (3) The third instruction for plaintiff is erroneous in that it wholly omits all question of whether plaintiff acted as a prudent person would have done under

the circumstances. *Kleiber v. Railroad*, 107 Mo. 240, 247, 263; *Railroad v. Beatty*, 73 Texas, 592; *Woolery v. Railroad*, 107 Ind. 381; *McGee v. Railroad*, 92 Mo. 208, 219; *Wilson v. Railroad*, 26 Minn. 278, 284; 1 Shear. & Red. on Neg., sec. 89; Booth's St. R'y Law, sec. 383; Hutchinson on Carriers, sec. 662 *a*; Beach on Cont. Neg. [2 Ed.], sec. 40; Whittaker's Smith on Neg., p. 392. (4) The fourth instruction for plaintiff is erroneous in that it declares as a matter of law that defendant was required to keep a watchman at the crossing where the accident occurred. This was a question for the jury, under proper instructions. *Becke v. Railroad*, 102 Mo. 544, 551; *Welsch v. Railroad*, 72 Mo. 451; *Bolinger v. Railroad*, 26 Minn. 418, 419; 2 Wood on Railroads [Minor's Ed.], 1531; 2 Shear. & Red., Neg., sec. 417; Patterson's R'y Acc. Law, 167; Booth's St. R'y Law, sec. 301. This instruction is also erroneous for the reason that it allows plaintiff to recover upon an allegation of negligence not contained in the petition. *Schlereth v. Railroad*, 96 Mo. 509, 515; *Dahlstrom v. Railroad*, 96 Mo. 99, 103; *Gurley v. Railroad*, 93 Mo. 445, 450. This instruction is too general in its terms. It allows plaintiff to recover for "any neglect" of defendant's servants. *Gurley v. Railroad, supra; Ravenscraft v. Railroad*, 27 Mo. App. 617, 621, 623; *Goodwin v. Railroad*, 75 Mo. 73, 74, 75.

*W. J. Hollis* for respondent.

(1) Plaintiff's first instruction is not erroneous, but is warranted by the law. It submitted no issues, as claimed by defendant, not warranted by the pleadings and the evidence. This is a passenger case. *Dougherty v. Railroad*, 97 Mo. 654. As to instructions being proper otherwise, see *Sharp v. Railroad*, 114

Mo. 94; *Hipsley v. Railroad*, 88 Mo. 348; *Coudy v. Railroad*, 85 Mo. 85; *Lemon v. Chanslor*, 68 Mo. 340; Angell on Carriers, sec. 569; Thompson on Carriers, p. 160; *Ibid*, p. 181; *Ibid*, p. 183; *Furnish v. Railroad*, 102 Mo. 438. (2) Plaintiff's second instruction standing alone on the question of damage, would have been erroneous but the error was cured by instruction 5, containing the elements recognized by law as forming the measure. All the instructions are to be taken together as a whole. *Roos v. Clark*, 14 Mo. App. 594; *Swan v. Lulhuan*, 12 Mo. App. 583; *O'Connell v. Railroad*, 106 Mo. 482; *Furnish v. Railroad, supra; Smith v. Railroad*, 108 Mo. 243. The second instruction given for appellant limits and fully explains to the jury the duty of appellant as to respondent, a passenger, and, taken together, fully declare the law. *Voegeli v. Marble and Granite Company*, 49 Mo. App. 643; *Fugler v. Bothe*, 43 Mo. 44; *Owens v. Railroad*, 95 Mo. 169; *Dougherty v. Railroad*, 97 Mo. 647; *Mfg. Company v. Guggemos*, 98 Mo. 39; *Schroeder v. Michel*, 98 Mo. 43. "A too general instruction on the measure of damages is harmless error, if accompanied by a full and correct one on the same subject." *Buck v. Railroad*, 108 Mo. 178. (3) The third instruction is not erroneous in omitting all question of whether plaintiff acted as a prudent person would have under the circumstances. There was no issue of contributory negligence made by the pleadings in this cause, and the undisputed evidence of both parties that plaintiff was directed by the conductor of the car to "get off and save himself" would bar defendant from raising that issue. *Siegrist v. Arnot*, 86 Mo. 200; s. c., 10 Mo. App. 197; *Adams v. Railroad*, 74 Mo. 554; *Dutzi v. Geisel*, 23 Mo. App. 676; *Kleiber v. Railroad*, 107 Mo. 263; *McGee v. Railroad*, 92 Mo. 208, 220; *Sey-*

*mour v. Railroad*, 114 Mo. 266-272. (4) On the other hand, where this relation does not exist, plaintiff must allege the specific acts of negligence relied upon, and his proof and instructions must be confined thereto. *Crane v. Railroad*, 87 Mo. 588; *Dougherty v. Railroad*, 97 Mo. 647-654; *Candy v. Railroad*, 85 Mo. 85. The authorities cited by defendant were where no watchman was kept and were not passenger cases. *Hipsley v. Railroad*, 88 Mo. 348; *Lemon v. Chanslor*, *supra;* Thompson on Car. Pass., p. 547, sec. 9; *Stokes v. Saltenstall*, 13 Peters, 181; s. c., Thompson, Car. Pass., p. 183; *Hegeman v. Railroad*, N. Y. Ct. App. 1885; s. c., Thompson, Car. Pass., p. 163; *Kleiber v. Railroad*, *supra*. (5) Plaintiff's fifth instruction is not objected to by defendant in its assignment of errors, but is mentioned in the argument as "only aggravating the mistake" in the second. This fifth instruction is copied from the one given in case of *Furnish v. Railroad*, 102 Mo. 443, which sustained a verdict of $10,000 and passed inspection by the supreme court.

SMITH, P. J.—I. The errors upon which defendant's appeal is grounded arise out of the action of the trial court in respect to the giving and refusing of instructions. The first instruction given for plaintiff told the jury, "that it was the duty of defendant to furnish, provide and maintain for the transportation of passengers for hire over its line of road, safe, suitable and trustworthy road, roadbed, tracks, cables, cars, grips, grip irons, brakes, machinery, appliances, etc., with careful, competent and skillful employees to operate the same, so far as the utmost practical skill, care, knowledge, foresight and wisdom could provide, and if you believe from the evidence that the plaintiff, Christina Jacquin, on or about the twenty-eighth day of July, 1892,

entered one of defendant's cars in Kansas City, Missouri, at about the intersection of Howard and Holmes streets, for the purpose of being conveyed into the city, paying therefor the usual fare; and if you further find from the evidence that when said car was going down an incline on Holmes street towards the Belt Line railroad tracks crossing said cable company's tracks and south of the same, the employees in charge of said car lost control of the same, and it ran down said incline of its own momentum towards the Belt Line railroads, on which there was an engine approaching, which caused terror and consternation among the passengers, and fear of danger in plaintiff's mind when informed thereof, of a collision between said car and said engine, and that to avoid said apparent danger plaintiff was directed by the defendant's servant to get off of said car, and, in getting off, was injured; then it rests on the defendant to prove to your satisfaction that said road, roadbed, tracks, cables, cars, grips, grip irons, brakes, machinery, appliances, etc., were safe, sound, reliable and trustworthy, and that the same were carefully and skillfully operated, and that said car became unmanageable, and said accident arose from, and was caused by, inevitable accident, or defect that could not have been seen, detected or known, to defendant, its servants or agents, by the exercise of the utmost practicable skill, knowledge, foresight, care, inspection, and examination of said road, roadbed, tracks, cars, machinery, etc., by defendant, its servants or agents, and unless the jury so believe, they will find for the plaintiff.''

It is objected by the defendant that this instruction embraced in its hypothesis actionable facts which are not within the limits of the pleadings. The plaintiff's petition alleged ''that it became and was the duty of defendant and its servants operating and manag-

ing said road and cars thereon, *first*, to have proper appliances for stopping the same; *second*, to use proper diligence to keep such control of its cars as to prevent the speed of the same from becoming dangerous to passengers thereon." The breachs of these duties are further alleged to be: "*First*. They so carelessly and negligently equipped their cars in not having proper brakes, sand boxes and sand furnished, and stopping appliances to stop or control their cars; *second*, so carelessly managed and operated said road and car at the date aforesaid, as to lose control of the same; and *third*, did carelessly permit said car to get beyond control, which caused the same on said decline to run by its own momentum uncontrolled, all of which caused consternation and excitement among the passengers." It will be seen that it is thus alleged to be the duty of the defendant to have proper appliances for stopping its *road and cars*. But it is needless to say the law enjoins no such duty; on the contrary, it is one of the imposed duties of defendant to provide such appliances for operating its road rather than for stopping it. No doubt the plaintiff meant to allege it to be the duty of defendant to have *proper appliances for stopping its cars* and not its *road* and cars. Accordingly, we shall so construe such to be the meaning of the allegation. *Stillwell v. Hamm*, 97 Mo. 579.

This instruction declares that it was the duty of defendant to provide and maintain "safe, suitable and trustworthy *road, tracks, cables, cars*, grips, grip irons, brakes, machinery, appliances, etc." The petition does allege it to be the duty of defendant to provide proper appliances for *stopping its cars*, but it does not allege it to be the duty of the defendant to provide and maintain safe and *suitable and trustworthy road, road-bed, tracks, cables and cars*. The instruction thus enumerates duties which are not included among those

alleged in the petition. The jury were thereby told that, if the defendant disregarded any one of these imposed duties, though the petition does not count upon a neglect to perform any one of them, the defendant was liable.

And so the jury were further told by this instruction that, if the employees in charge of said car, lost control of the same and it ran down said incline of its own momentum towards the Belt Line railroad, on which there was an engine approaching, which caused terror and consternation among the passengers and fear and danger in the plaintiff's mind, when informed thereof, of a collision between said car and engine and that to avoid said apparent danger plaintiff was directed by defendant's servant to get off said car and in doing so was injured, then it rested on defendant to prove to their satisfaction that its road, roadbed, tracks, cables, cars, grips, grip irons, brakes, machinery, appliances, etc., "were safe, sound, reliable and trustworthy." Under the allegations of the petition it would have been sufficient to exonerate the defendant from liability if it could show to the satisfaction of the jury that it had provided proper appliances for stopping the car, such as brakes, sand boxes and sand, but not so under the instruction, for it told the jury that defendant could not relieve itself of the consequences of the plaintiff's injury unless it proved to their satisfaction that its road, roadbed, tracks, machinery, cables, cars, grips, grip irons, brakes, appliances, etc., were safe, sound, reliable and trustworthy.

The neglect of the duty to provide proper appliances to stop the car alleged in the petition is in the instruction so widened and expanded as to impose upon the defendant, before it could be relieved of liability for plaintiff's injury, the burden of showing to the satisfaction of the jury performance of the many

other duties enumerated in the instruction. Even if the defendant had shown to the satisfaction of the jury that it had provided proper brakes, sand boxes and sand furnished and other appliances for stopping its cars and so was not guilty of the negligence in that regard charged in the petition, yet unless the defendant could make the further showing to the satisfaction of the jury that its road, roadbed, tracks, cables and machinery were likewise safe, sound, reliable and trustworthy it could not escape liability. It submitted to the jury grounds of negligence not alleged in the petition.

It has been many times ruled in this state in actions for negligence that it is the duty of the court trying the case by its instructions to confine the jury to the consideration of the specific grounds of negligence alleged in the petition. *Schlereth v. Railroad*, 96 Mo. 509; *Dahlstrom v. Railroad*, 95 Mo. 99; *Gurley v. Railroad*, 93 Mo. 445; *Halpin Mfg. Co. v. School Dist.*, 54 Mo. App. 371; *Aultman-Taylor Co. v. Smith*, 52 Mo. App. 351; *Bright v. Fonda*, 44 Mo. App. 634. It was made possible by this instruction for the plaintiff to have recovered upon a cause of action, upon a negligent act submitted by it to the jury and not alleged in the petition.

The rule has also been quite as often declared that a plaintiff can not declare on one cause of action and recover upon another. *Sedalia Gas Light Co. v. Mercer*, 48 Mo. App. 644; *Bank v. Armstrong*, 62 Mo. 59; *Buffington v. Railroad*, 54 Mo. 246; *Waldhier v. Railroad*, 71 Mo. 514; *Price v. Railroad*, 72 Mo. 414; *Ely v. Railroad*, 77 Mo. 34; *Gurley v. Railroad*, 93 Mo. *supra*. The true rule to be deduced from the more recent appellate court cases in this state is to the effect that the acts which it is intended to be shown were negligently done should be set out with a reasonable degree of particularity and in some appropriate form of

expression charged to have been negligently done. *Carpenter v. McDavitt*, 53 Mo. App. 393; *Gurley v. Railroad, supra; Mack v. Railroad,* 77 Mo. 232; *Schneider v. Railroad,* 75 Mo. 295; *Evans v. Railroad,* 72 Mo. 213; *Sullivan v. Railroad,* 97 Mo. 113; *LeMay v. Railroad,* 105 Mo. 361; *Pope v. Railroad,* 99 Mo. 400; *Shaw v. Railroad,* 104 Mo. 648. The petition should advise the defendant of the particular negligence complained of so that he may know what he is called upon to defend against. If an instruction like the one here submitting to the jury acts of negligence not alleged in the petition can be sustained, then the rule just stated is no more than "a delusion and a snare."

It is further objected that the said instruction is erroneous in that it required the defendant to exercise the "utmost practical skill, care, knowledge, foresight and wisdom and in order to relieve itself from the consequences of the plaintiff's injury to show, to the satisfaction of the jury, that it exercised the utmost *practicable* skill, knowledge, foresight, care, inspection and examination of its road, roadbed, tracks, cars, machinery, etc." The measure of duty required of defendant by this instruction was in excess of that required by the law. Passenger carriers bind themselves to carry safely those whom they take into their coaches as far as human care and foresight will go; that is, for the utmost care and diligence of a very cautious person or, as sometimes otherwise expressed, the utmost care and skill which prudent men are accustomed to use under similar circumstances. Story on Bailment, sec. 601; Shearman & Redfield on Negligence [4 Ed.], sec. 405; *Smith v. Railroad,* 108 Mo. 243; *Gibson v. Railroad,* 76 Mo. 283; *Furnish v. Railroad,* 102 Mo. 438; *O'Connell v. Railroad,* 106 Mo. 482; *Wilmott v. Railroad,* 106 Mo. 535; *Jackson v. Railroad,* 24 S. W. Rep. 192.

But this rule is not to be understood as requiring

the utmost degree of care which the human mind can attain or is capable of inventing. Wharton on Negligence, secs. 634, 635; Hutchinson on Carriers, sec. 502; 2 Rorer on Railroads, 955; *Carter v. Railroad*, 42 Fed. Rep. 37. This instruction was fatally faulty in omitting the qualification already stated, that is to say, borrowing the language of Judge GANTT in *Jackson v. Railroad*, "the utmost care and skill which prudent men would use and exercise in like business and under similar circumstances."

But the plaintiff insists that the instruction in question is supported by the ruling made in *Dougherty v. Railroad*, 97 Mo. 647. It is quite true that an instruction given for the plaintiff in that case declared that, if the plaintiff, while a passenger on defendant's car, was injured as there described, then the burden of proof was on defendant to prove to the satisfaction of the jury that the injury was caused by something not under the control of defendant, and not from the use of unsuitable or skittish horses or careless or unskillful driving or management of the car and that by "the *exercise of the utmost human foresight, knowledge, skill and care*" such injury could have been prevented. This instruction was at first approved but subsequently on a motion for rehearing it was disapproved for the reason that it stated the rule too broadly as to the degree of care required of the carrier. Nor do any of the later cases in this state, which we have seen, lend countenance to the rule as announced by this instruction. Nor does the first instruction given for the defendant cure the defect of plaintiff's first. It is quite true that it contained the qualification which we have shown was omitted from the plaintiff's first, but this qualification was limited to the maintenance of the road and the construction and operation of the car. No mention is there made of the "roadbed,

tracks, cables, cars, grips, grip irons, brakes, machinery, appliances, etc., nor of the utmost practical skill, care, knowledge, foresight and wisdom," and so is not broad enough to cure the defect complained of in plaintiff's said instruction.

The defendant further suggests that said instruction is erroneous for the reason that the first part of it is as to the duty of the defendant to exercise skill, care, knowledge, foresight and wisdom in maintaining its road, roadbed, tracks, cables, cars, grips, grip irons, brakes, machinery, appliances, etc., and then that it submits whether the plaintiff was a passenger and whether she was injured by jumping from the car, and closes as follows: "Then it rests on the defendant to prove to your satisfaction that said road, roadbed, tracks, cables, cars, grips, grip irons, brakes, machinery appliances, etc., were safe, sound, reliable and trustworthy, and that the same were carefully and skillfully operated, and that said car became unmanageable and said accident arose from and was caused by inevitable accident or defect that could not have been seen, detected or known to defendant, its servants or agents, by the exercise of the utmost practicable skill, knowledge, foresight, care, inspection and examination of said road, roadbed, tracks, cars, machinery, etc., by defendant, its servants or agents, and, unless the jury so believe, they will find for the plaintiff."

Suppose under the law the burden was on the defendant to establish that there was no negligence whatever and that the injury was occasioned by inevitable casualty or by some cause which human foresight could not prevent, still it may be asked what was there in the pleadings or the evidence that authorized the court to require, as it did by this instruction, that the defendant prove to the satisfaction of the jury that the injury was occasioned by inevitable accident or by a

defect, or else there would be a liability.

The defense was not defect in any of the instrumentalities named in the instruction, but that the injury was occasioned by a wet track and the shortness of the distance of the moving car from the gates when they went down which made it not physically, but practically, impossible to stop the car. The defense was not, as in *Lemon v. Chanslor*, 68 Mo. 340, where it was alleged in the answer that the track was sound so far as could be seen or known by human foresight, skill and diligence and that from some cause unknown and which the utmost skill and diligence could not foresee, the left spindle of the front axle gave way and occasioned the injury.

It is, therefore, obvious while the requirement of this instruction might be well enough in a case like the one just referred to, it could have no appropriate place in a case of this kind. It practically excluded from the consideration of the jury the defense interposed by the defendant and substituted and submitted one not invoked by defendant. As construed by the defendant its requirement was to show a defect instead of a cause. We therefore are of the opinion that the plaintiff's first instruction is justly subject to the objections lodged against it by defendant and should not have been given in the form that it was.

II. The defendant assails the second instruction given for the plaintiff, which informed the jury that, if they found for the plaintiff, to place her damages at such sum as they believed from the evidence she had suffered, not exceeding $10,000, as erroneous in that it declares a too general rule on the measure of damages and does not confine the jury to the elements recognized by law as forming part of the amount of damages which she was entitled to recover.

It is now the well recognized rule of law that the

damages recoverable in cases of this kind must be limited to compensation for the pain suffered, time lost and permanent injuries occasioned by the negligence complained of. To these may be added expense, if any, necessarily incurred about being cured. The instruction of the plaintiff just referred to contains no such limitation and must be held obnoxious to the defendant's objection. *Hawes v. Stock Yards*, 103 Mo. 66; *Stephens v. H. & St. J. Railroad Co.*, 96 Mo. 207, 211; *Matney v. Gregg Bros. Grain Co.*, 19 Mo. App. 107, 112; *Stewart v. City of Clinton*, 79 Mo. 603, 607, 614; *Flynt v. Railroad*, 38 Mo. App. 94, 98; *McGowan v. Ore and Steel Co.*, 109 Mo. 518; Patterson on R'y Acc. Law, sec. 389, p. 468; 1 Shearman & Redfield on Neg. [4 Ed.], sec. 740, p. 629; 3 Sutherland on Dam. [2 Ed.], sec. 1256, p. 2694.

The plaintiff admits that her second instruction standing alone would be erroneous, but insists that the error therein is cured by that given for her number 5. This instruction directed the jury, "That if you find for the plaintiff, you will assess her damages at such sum as you may believe from the evidence will compensate her for her injuries, including all bodily pain and mental anguish you may believe from the evidence she has suffered, if any, and will necessarily suffer, if she will so suffer, and any permanent injury or incapacity you may believe from the evidence she has sustained, if any, and it will be proper for you to consider also the effect of the injury upon the plaintiff's health in the future, if you believe from the evidence her future health will be affected by the injury, and allow all damages, present and future, which from the evidence you believe to be the necessary result of the injury complained of, not exceeding the sum of $10,-000.''

There is no difference other than in the forms of

expression between telling the jury, as in plaintiff's second instruction, to "place her damages at such sum as you believe she has suffered not exceeding ten thousand dollars," and in telling the jury, as in plaintiff's fifth instruction, to "assess her damages at such sum as you may believe from the evidence will compensate her for injuries, not exceeding $10,000." In both the jury are left fancy free to take into consideration any element or ingredient that they may choose in estimating the damages. There is no restriction imposed unless it be found in that part of the said fifth instruction which told the jury to assess plaintiff's "damages at such sum as you believe from the evidence will compensate her for her injuries, including all bodily pain," etc. Now this last named instruction does not restrict the inquiry of the jury. It tells the jury no more than that in placing the damages which in the judgment of the jury will compensate plaintiff to include the elements specified. That is to say, they must include these elements along with any other that they may think plaintiff should recover to compensate her for her injuries. The jury are required to consider these elements, but are not precluded from considering others which in their opinion ought to be included. The latter of said two instructions does not correct the vice in the first. They can not be approved, whether considered separately or together, each being faulty for the reasons already stated.

III. The defendant further contends that the plaintiff's fourth instruction which informed the jury, "that it was the duty of the defendant to employ a competent and careful watchman, flagman or guard at the street crossing where its line of street railway crossed the Belt Line railway tracks, as well as careful, competent men to manage said car, and if you believe the accident in question was caused by any neglect or incompetency of the watchman or flagman, and that plaintiff received

the injury complained of by reason of such neglect or incompetency, then your verdict should be for the plaintiff," is erroneous in its enunciation. It does not appear that there is any ordinance of Kansas City in force requiring defendant to keep a watchman at the street crossing where the injury occurred. Nor is there any statute of this state making such requirement. In the absence of such regulations a railway is not bound to keep a watchman at its crossings, but a jury may find in view of the danger at a particular crossing that it was negligence to omit such precaution. 2 Woods on Railroads, 1531; Patterson's R'y Acc. Law, sec. 167; Booth on Street Railways, sec. 301; *Bolinger v. Railroad*, 26 Minn. 418. And hence it was error for the court as a matter of law to instruct the jury that it was the duty of the defendant to keep a watchman at said street crossing. And in this connection it may be observed that the third instruction given by the court on its own motion is subject to a like objection.

The defendant further suggests that the plaintiff's said fourth instruction is also erroneous in declaring to the jury that, if the plaintiff's injury was caused by any neglect or incompetency of the watchman and that plaintiff received the injury by reason of such neglect or incompetency, the defendant was liable. Instructions must have the pleadings as their basis. By reference to the petition it will be seen that there is not there to be seen any such charge of negligence. There is no visible connection between the watchman mentioned in the instruction and the specific grounds of negligence stated in the petition. As has already been stated in the first paragraph of this opinion, the law is that the instructions must confine the jury to the specific grounds of negligence alleged in the petition. As already stated it is elemental that a plaintiff can not declare upon one cause of action or one negligent act,

and recover upon another and entirely different cause of action or act of negligence.

But the plaintiff in opposition to this view of the law insists that in cases where the relation of carrier and passenger exists, that the plaintiff need only plead and prove this relation, the accident and injury—that this establishes a *prima facie* case of negligence and casts the burden upon the defendant, if he would absolve himself from consequent liability, to show that the occurrence causing the injury could not have been avoided by the exercise of the utmost practicable skill and human foresight. And that it is only in the class of cases where this relation has no existence that the injured party must allege the specific acts of negligence relied on to recover and confine his proof and instructions thereto. Whether such distinction exists is the question.

In *Furnish v. Railroad*, 102 Mo. 438, which was an action by a passenger, it was said that the mere injury of plaintiff while a passenger did not call for explanation or proof from defendant. It first devolved on plaintiff to show some fact with reference to it from which negligence on defendant's part as a carrier might be fairly inferred. Here the car ran off the track and over the embankment. The condition of the roadway at that point warranted the inference that the injury was occasioned thereby. In that state of the case if the jury found the plaintiff had been injured by the derailment of the car and its fall down the embankment, it then devolved on the defendant to explain how these things occurred without breach of duty to plaintiff as a carrier. And so it was declared in *Dougherty v. Railroad*, 9 Mo. App. 480; 81 Mo. 325, that when an injury is shown to have been produced either by breaking down or failure of the carrier's vehicle or other physical appliances, or by an error of

the carrier or his servants in operating them without more, a presumption of negligence arises against the carrier. And a similar statement of the law is to be found elsewhere. *Curtis v. Railroad*, 18 N. Y. 534; Thompson on Carriers, pp. 210, 211; Hutchinson on Carriers, sec. 799; Shearman & Redfield on Negligence, sec. 516; Wood on Railroads, 1563.

Under the statute the petition is required to contain a plain and concise statement of the facts constituting a cause of action. Every fact which plaintiff must prove to maintain his suit is constitutive in the sense of the statute and must be alleged. *Pier v. Hienrichoffen*, 52 Mo. 333. Accordingly the plaintiff can not file a petition and make no allegation whatever as to the competency of defendant's employees and then recover under an instruction that if the jury believe the accident was caused by the neglect of the watchman when there is nothing in the facts proved by the evidence showing any connection whatever of the watchman with the proximate cause of the plaintiff's injury. And this rule is applicable to passenger cases. *Leslie v. Railroad*, 88 Mo. 50; *Marshall v. Railroad*, 78 Mo. 610.

In no view of the law that we have been able to take are we able to give our approval of these instructions. Some other alleged errors have been called to our attention in the brief of defendant; but these, if errors at all, we think innocuous in this case and so need not be discussed.

It results that the judgment must be reversed and cause remanded. All concur.